### Alexandria

### SOHRAB BAGHERI

v.

### COMMONWEALTH OF VIRGINIA

No. 0936-89-4

Decided August 6, 1991

▮▮▮▮▮▮▮▮▮▮▮

COUNSEL

Peter M. Baskin; Stephen J. Crum, for appellant.

Leah A. Darron, Assistant Attorney (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BENTON, J.**—Sohrab Bagheri was convicted upon a bench trial on two counts of uttering checks knowing that his account contained insufficient funds. His appeal raises three issues: (1) whether the trial judge erred in overruling Bagheri's motion to strike at the close of the Commonwealth's evidence, (2) whether the Commonwealth proved beyond a reasonable doubt that Bagheri knowingly and intentionally passed worthless checks, and (3) whether the Commonwealth proved beyond a reasonable doubt the account lacked sufficient funds or credit when Bagheri wrote and delivered the checks. We conclude that the Commonwealth sufficiently proved Bagheri committed the charged offenses, and we affirm the convictions.

## FACTS

The Commonwealth's evidence proved that Bagheri, an automobile dealer, wrote two checks, each dated August 24, 1988, for the purchase of two cars from Stohlman Leasing Company. The general manager for Stohlman testified that he received checks in the amounts of $12,500 and $33,000 on August 24, 1988. Both checks were deposited to Stohlman's bank account and returned to Stohlman stamped, "insufficient funds." On November 17, 1988, Stohlman's legal counsel sent two certified letters to Bagheri notifying him that the checks were returned unpaid and advising him to pay the debts within five days in accord with Code § 18.2-183. Bagheri signed receipts for both letters. Bagheri neither paid the amount due nor returned the cars to Stohlman.

The Commonwealth introduced Bagheri's bank account statements covering the latter half of July 1988 through the beginning of September 1988. Deposits to the account include $23,722.77 on August 23, $15,400 on August 24, $22,700 on August 25, and $4,090 on August 26. However, the account had a negative balance from August 24 until August 31, except on August 25 when

there was a balance of $10,022.04. Prior to and after August 24, 1988, numerous checks were presented to the bank, but were returned by the bank the next day as unpaid. Some checks were twice presented and returned unpaid.

Bagheri moved to strike the evidence, arguing the Commonwealth failed to show "that there were insufficient funds in this account on the day that the checks were written." He contended that, although the checks were stamped "insufficient funds," there was no indication that they were stamped on August 24, 1988. He argued that in the absence of proof of the account's status on the day the checks were written, the evidence failed to prove an offense. The trial judge denied the motion.

Bagheri began his defense with his accountant's review of the checking account statement for August 1988. The accountant recounted various deposits:

On August 15 [Bagheri] deposited $25,200, which deposit slips is here and I have a copy of them. On August 16 he deposited $73,825. And on August 23 he deposited $23,672.27. And on August 24 he deposited $15,400.

On this information, the accountant asserted that Bagheri deposited "around 140, 145 thousand, something like that" and had sufficient funds in the account on August 24, 1988 to cover the checks.

The accountant also testified that his analysis of the account indicated that, "[b]ased on the [bank's] experience [with Bagheri's] business, [the bank] gave him immediate credit when he deposited a check." The accountant reached that conclusion by observing that whenever the bank statements reported negative balances at the close of a day, the bank would pay the day's checks and rely on the next day's deposits to cover the insufficiency. Thus, he concluded that although at the close of August 23 and 24 the statement reported a negative balance, the bank normally extended credit to Bagheri and paid the checks on those days.

Bagheri testified that he wrote the checks on August 24, but delivered the $33,000 check on August 25 and the $12,500 check on August 26 because he was waiting to receive more money to

deposit. He deposited $15,400 on August 24 and $22,700 on August 25 believing that the bank gave him immediate credit for the deposits. He testified that he reconciled the account as he wrote checks and made deposits, but admitted he had no line of credit with the bank to cover checks written on a negative balance. Bagheri did not introduce his own checking account records that he claimed to maintain on a daily basis. Bagheri denied any intent to defraud Stohlman or to pass a bad check.

## MOTION TO STRIKE

Bagheri first argues that the trial court erred in overruling his motion to strike made at the close of the Commonwealth's case-in-chief. We disagree. "It is well settled . . . that when a defendant elects to present evidence on his behalf, he waives the right to stand on his motion to strike the evidence made at the conclusion of the Commonwealth's case." *White v. Commonwealth*, 3 Va. App. 231, 233, 348 S.E.2d 866, 867 (1986). Therefore, "the sufficiency of the evidence is to be determined from the entire record." *Hargraves v. Commonwealth*, 219 Va. 604, 605, 248 S.E.2d 814, 815 (1978).

## SUFFICIENCY OF THE EVIDENCE

Code § 18.2-183 provides that:

the making or drawing or uttering or delivery of a check, draft, or order, payment of which is refused by the drawee because of lack of funds or credit shall be prima facie evidence of intent to defraud or of knowledge of insufficient funds in, or credit with, such bank . . . unless such maker or drawer, or someone for him, shall have paid the holder thereof the amount due thereon, together with interest, and protest fees . . . within five days after receiving written notice that such check, draft, or order has not been paid to the holder thereof.

Since the drawer's state of mind is difficult to prove, the General Assembly created "a rebuttable presumption of the necessary intent and knowledge if a dishonored check is not paid within five days after giving of the notice specified in the statute." *Huntt v. Commonwealth*, 212 Va. 737, 739, 187 S.E.2d 183, 186 (1972); *see also Cook v. Commonwealth*, 178 Va. 251, 258, 16 S.E.2d 635, 638 (1941).

The Commonwealth introduced both returned checks stamped "insufficient funds" as well as bank statements indicating the checks were both presented and returned on two separate occasions. Evidence showed that Stohlman notified Bagheri by certified mail that the bank dishonored the checks and that Stohlman demanded payment within five days, but received none. This evidence is sufficient to invoke the rebuttable presumption of Code § 18.2-183.

Bagheri argues that the conviction should be overturned because he proved that the bank extended him credit whenever it paid the overdrafts in anticipation of future deposits. We conclude that the evidence fails to rebut the statutory presumption. Code § 18.2-181 defines credit as "any arrangement or understanding with the bank . . . for the payment of such check." Bagheri presented no evidence of a credit arrangement or understanding with the bank. His accountant testified that his analysis of the transactions indicated that the bank, as a matter of practice, did extend credit on overdrafts. The documentary evidence, however, does not support the accountant's conclusion.

The bank statements prove only that Bagheri's bank (1) made entries on Bagheri's account when checks drawn on the account were presented for payment, (2) posted checks to Bagheri's account causing an overdraft, and (3) returned checks the day following the posting when deposits posted to the account did not eliminate the overdraft. The Uniform Commercial Code, as adopted in Virginia, permits Bagheri's bank, which is the payor bank in these transactions, to provisionally post Bagheri's account on the day a check is received for payment. *See* Code § 8.4-109 (and the Official Comment). The provisional posting is not final payment and may be reversed by returning the check prior to the bank's midnight deadline. *See* Code §§ 8.4-104(h), 8.4-104(j), 8.4-213 (and the Official Comment), and 8.4-301 (and the Official Comment).

The account statement for July 1988 shows that during the period from July 15 to July 29 the bank dishonored and returned the next day six checks that were drawn on a negative balance. Similarly, the August 1988 statement shows that thirty-two checks, including the two checks at issue, were dishonored and returned on the next day for insufficient funds. Thus, the transactions shown on the bank statements prove only that the bank was operating

within recognized commercial practices. The bank statements do not prove that Bagheri had a credit arrangement or understanding with the bank regarding the payment of overdrafts.

Furthermore, the accountant's testimony contradicted his own theory that the bank's statement of accounts proved a credit arrangement between Bagheri and the bank. He testified as follows:

Q. [D]id [Bagheri] have sufficient funds in the account to cover those checks [on August 24]?

A. If [Stohlman] presented the checks back while he had sufficient funds, *some other check would bounce.*

\* \* \*

Q. And if the account were to say that there is a returned fee, how would you count that into your calculations?

A. It shows that one check has been returned.

Q. And you would deduct that because that's a fee that the bank charges you for every returned check?

A. That's correct.

Q. And that's a check returned that is *not paid*?

A. That's correct.

(emphasis added).

On this evidence, Bagheri failed to prove the bank was extending credit for his overdrafts. When considering Bagheri's own admission that he wrote checks with the hopes of covering the amount with future deposits and Bagheri's failure to either pay Stohlman or return the cars, the trial judge reasonably concluded that the evidence proved beyond a reasonable doubt Bagheri intentionally and knowingly wrote and delivered checks on an account with insufficient funds. "[T]he 'Bad Check' statute is specifically aimed to discourage the giving of bad checks for what purports to be a cash purchase when the drawer has, instead of the present means, only a vague intention to make the check good some time in the future." *Cook*, 178 Va. at 259, 16 S.E.2d at 638.

We reject Bagheri's further contention that the evidence was insufficient to prove the account lacked sufficient funds when the checks were written or delivered. The account statements introduced by the Commonwealth prove the status of the account bal-

ances on the relevant dates. The accountant merely testified there were sufficient *deposits* to cover the two checks. A review of the statement demonstrates that the account carried a negative balance on August 23 and 24 and from August 26 to August 31. On September 1, the account reported a positive balance only after the $33,000 check at issue was unpaid and returned for the second time. There was a $10,022.04 balance at the close of August 25, which was obviously insufficient to satisfy either check. Thus, the evidence proved beyond any doubt that the account contained insufficient funds to cover the checks at any time between August 24 and September 1, 1988.

Accordingly, we affirm the conviction.

*Affirmed.*

Koontz, C.J., and Keenan, J.,* concurred.

---

\* Justice Keenan participated in the hearing and decision of this case prior to her investiture as a Justice of the Supreme Court of Virginia.