COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Clements and Kelsey
Argued at Richmond, Virginia


STEVEN LAWRENCE SYKES
                                                    OPINION BY
v.      Record No. 2819-02-2            JUDGE JEAN HARRISON CLEMENTS
                                                    MARCH 9, 2004
COMMONWEALTH OF VIRGINIA



FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Paul M. Peatross, Jr., Judge

James Hingeley, Public Defender, for appellant.

Eugene Murphy, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Steven Lawrence Sykes was convicted in a bench trial of five felony counts of issuing

bad checks, third or subsequent offense of larceny, in violation of Code §§ 18.2-181 and

18.2-104.  On appeal, Sykes contends the trial court erred in applying Code § 18.2-183's

evidentiary presumption of fraudulent intent to him because the checks he wrote in this case

were drawn on closed, rather than nonexistent, bank accounts.  Finding no error, we affirm the

judgment of the trial court.

I.  BACKGROUND

The relevant facts in this case are undisputed.  Between November 5, 1999, and March

18, 2000, Sykes, using accounts at three different banks, wrote five checks that were each

returned unpaid by the drawee bank to the merchant to whom it had been written.  Each returned

check was marked "Account Closed."

Sykes was indicted by the grand jury for issuing each of the five unpaid checks, third or subsequent offense of larceny, in violation of Code §§ 18.2-181 and 18.2-104. At trial, Sykes, who presented no evidence, moved, following the presentation of the Commonwealth's evidence, to strike the five charges, contending the Commonwealth had failed to prove he had the requisite intent to defraud. He argued only that the presumption of fraudulent intent under Code § 18.2-183 did not apply to him because he had written the unpaid checks on banks with which he had a closed account, rather than on banks with which he had "no account." Determining that Code § 18.2-183's evidentiary presumption of fraudulent intent applied to checks drawn on a closed bank account, the trial court denied Sykes's motion and subsequently convicted him of the five charged offenses.

This appeal followed.

## II. ANALYSIS

In relevant part, Code § 18.2-183 provides that,

> [w]hen a check is drawn on a bank in which the maker or drawer has no account, it shall be presumed that such check was issued with intent to defraud, and the five-day notice [to the maker or drawer of the check that the check was not paid by the bank, which is otherwise necessary to trigger the statute's presumption of intent to defraud,] shall not be required in such case.

On appeal, Sykes does not dispute that he wrote the five bad checks at issue in this case on bank accounts that were closed. He contends, however, that the trial court improperly relied upon the presumption of fraudulent intent under Code § 18.2-183 to convict him of issuing the five bad checks, because that presumption expressly arises only "[w]hen a check is drawn on a bank in which the maker or drawer has no account," and not, as in this case, when a check is drawn on a closed account. Writing a check on a closed account, he argues, "must be distinguished," under the statute, from writing a check on a bank in which the writer has "no

account," because, unlike a check written on a nonexistent account, a check written on a closed account "simply does not demonstrate on its face that the drawer intended to defraud." This is so, he argues, because a check writer's bank account could be closed, through no fault of his own, without his knowledge. Moreover, he argues further, unlike persons having no account, "holders of closed accounts could have credit with the bank." The legislature, he asserts, considered the difference between writing a check on a closed account and on a nonexistent account so substantial that, despite specifically referencing both types of account in Code § 18.2-184, it intentionally omitted the writing of checks on a closed account from operation of the presumption of fraudulent intent contained in Code § 18.2-183. Accordingly, he concludes, the trial court erred in determining that Code § 18.2-183's presumption of intent to defraud applies to one who writes a check on a closed account.

In response, the Commonwealth argues that, in accordance with the plain meaning and purpose of Code § 18.2-183, a bank account that has been closed is subsumed within the meaning of "no account." Therefore, the Commonwealth concludes, the trial court properly employed the statute's presumption of intent to defraud in finding Sykes guilty of issuing the five bad checks, in violation of Code § 18.2-181.

A conviction under Code § 18.2-181 requires proof of, among other things, "the fraudulent intent of the drawer of the check."[1] Sylvestre v. Commonwealth, 10 Va. App. 253,

---

[1] Code § 18.2-181 states, in relevant part:

> Any person who, with intent to defraud, shall make or draw or utter or deliver any check, draft, or order for the payment of money, upon any bank, banking institution, trust company, or other depository, knowing, at the time of such making, drawing, uttering or delivering, that the maker or drawer has not sufficient funds in, or credit with, such bank, banking institution, trust company, or other depository, for the payment of such check, draft or order,

258, 391 S.E.2d 336, 339 (1990): see also Bray v. Commonwealth, 9 Va. App. 417, 422, 388

S.E.2d 837, 839 (1990) (noting that "the gravamen of the offense" set forth in Code § 18.2-181 is

"the intent to defraud"). "Such intent is an indispensable element of the crime and the burden is

upon the Commonwealth to prove its existence at the time of drawing or uttering the check."

Bray, 9 Va. App. at 422, 388 S.E.2d at 839. In recognition of the difficulty faced by the

Commonwealth in proving the requisite fraudulent intent in cases such as this, Code § 18.2-183

defines "a rule of evidence upon which the Commonwealth may rely in facilitating proof of the

fraudulent intent of the drawer."[2] Id. at 423, 388 S.E.2d at 840. Under Code § 18.2-183, the

---

        although no express representation is made in reference thereto,
shall be guilty of larceny . . . .

[2] Code § 18.2-183 provides:

        In any prosecution or action under the preceding sections, the making or drawing or uttering or delivery of a check, draft, or order, payment of which is refused by the drawee because of lack of funds or credit shall be prima facie evidence of intent to defraud or of knowledge of insufficient funds in, or credit with, such bank, banking institution, trust company or other depository unless such maker or drawer, or someone for him, shall have paid the holder thereof the amount due thereon, together with interest, and protest fees (if any), within five days after receiving written notice that such check, draft, or order has not been paid to the holder thereof. Notice mailed by certified or registered mail, evidenced by return receipt, to the last known address of the maker or drawer shall be deemed sufficient and equivalent to notice having been received by the maker or drawer.

        If such check, draft or order shows on its face a printed or written address, home, office, or otherwise, of the maker or drawer, then the foregoing notice, when sent by certified or registered mail to such address, with or without return receipt requested, shall be deemed sufficient and equivalent to notice having been received by the maker or drawer, whether such notice shall be returned undelivered or not.

- 4 -

Commonwealth is able to avail itself of a presumption of the drawer's intent to defraud by showing that the refused check at issue was "drawn on a bank in which the maker or drawer ha[d] no account." Hence, once the Commonwealth proves that a check was "drawn on a bank in which the maker or drawer ha[d] no account," the fact finder can infer that the drawer of the check had the requisite intent to defraud. However, the presumption is rebuttable, and, thus, merely serves "to put the burden on the defendant to introduce evidence to explain or excuse." Johnson v. Commonwealth, 188 Va. 848, 855, 51 S.E.2d 152, 155 (1949); see Patterson v. Commonwealth, 216 Va. 306, 308, 218 S.E.2d 435, 436 (1975) (stating that the same presumption set forth in the predecessor statute to Code § 18.2-183 is rebuttable); cf. Bagheri v. Commonwealth, 12 Va. App. 1071, 1074, 408 S.E.2d 259, 262 (1991) (noting that the presumption invoked pursuant to similar provisions of Code § 18.2-183 is rebuttable).

Here, the evidence presented at trial proved that Sykes wrote five checks that were refused by the respective drawee banks for lack of funds. Each returned check was marked "Account Closed." Relying on the presumption of fraudulent intent set forth in Code § 18.2-183, which was not rebutted by Sykes, the trial court found Sykes guilty of issuing each of the five bad checks, in violation of Code §§ 18.2-181 and 18.2-104.

The sole issue on appeal is whether the trial court properly employed Code § 18.2-183's presumption of fraudulent intent in finding Sykes guilty of issuing the five bad checks. Specifically, we must determine whether the term "no account" in Code § 18.2-183 includes,

---

When a check is drawn on a bank in which the maker or drawer has no account, it shall be presumed that such check was issued with intent to defraud, and the five-day notice set forth above shall not be required in such case.

within the meaning of that statute, a bank account that has been closed. For the reasons that follow, we hold that it does.

In accordance with basic principles of statutory construction, "'[w]hen a statute is plain and unambiguous, a court may look only to the words of the statute to determine its meaning.'" Caprio v. Commonwealth, 254 Va. 507, 511-12, 493 S.E.2d 371, 374 (1997) (quoting Harrison & Bates, Inc. v. Featherstone Assoc., 253 Va. 364, 368, 484 S.E.2d 883, 885 (1997)). "Non-technical words in statutes are taken to have been used in their ordinary sense and acceptation." Bd. of Supervisors v. Boaz, 176 Va. 126, 130, 10 S.E.2d 498, 499 (1940). "The manifest intention of the legislature, clearly disclosed by its language, must be applied." Anderson v. Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944). Accordingly, "we will not apply 'an unreasonably restrictive interpretation of the statute' that would subvert the legislative intent expressed therein." Armstrong v. Commonwealth, 263 Va. 573, 581, 562 S.E.2d 139, 144 (2002) (quoting Ansell v. Commonwealth, 219 Va. 759, 761, 250 S.E.2d 760, 761 (1979)).

The language of Code § 18.2-183 at issue here is plain and unambiguous, and clearly manifests the legislature's intent that a defendant who writes a check on a bank in which he does not have an account is subject to the rebuttable presumption that he wrote that check with the intent to defraud. In ascertaining whether writing a check on an account that has been closed is equivalent, within the statute's meaning, to writing a check on a bank in which the check writer does not have an account, we observe that the Supreme Court has previously noted, in an opinion interpreting the predecessor statute to Code § 18.2-183, that "[t]here is no distinction between a checking account which does not exist and one which has been closed." Patterson, 216 Va. at

308 n.1, 218 S.E.2d at 436 n.1. Although the Court's statement is arguably dictum, its correctness is undeniable.

Common sense and reason dictate that a "closed account" is an account that, for all practical purposes, no longer exists. In common parlance, the verb "close" means "to bring to an end . . . or preclude further continuation of." Webster's Third New International Dictionary 1914 (1993). In the legal context, "close" means "[t]o finish, bring to an end, conclude, terminate, complete, wind up; as, to 'close' an account." Black's Law Dictionary 254 (6th ed. 1990). Accordingly, a closed account is one that has been ended and, thus, has ceased to exist, except perhaps in an historical sense as a former account. Indeed, a reasonable person attempting to cash a check at a bank in which his account had been closed would have to respond, if asked by a bank teller if he had an account at that bank, that he used to have an account at the bank, but not anymore. He could not rationally say he still had an account with the bank. We conclude, therefore, that, once an account with a bank is closed, there is "no account," within the meaning of Code § 18.2-183.[3] Consequently, when a check is written on an account that has been closed, it is drawn on "no account." Hence, if the Commonwealth proves that a check was drawn on a closed account, the fact finder can infer under Code § 18.2-183 that the drawer of the check had the requisite intent to defraud.

Sykes points out that there could be instances in which a person might unwittingly write a check on an account that he did not know had been closed. As previously mentioned, however, the presumption of fraudulent intent arising under Code § 18.2-183 is rebuttable. Thus, when a court is presented with evidence that the defendant has written a check on a closed account, the

---

[3] As the issue is not before us, the existence of some other, unrelated account between the bank and the check writer is not relevant to this discussion.

defendant is afforded the opportunity to offer evidence to show that the check was not written with fraudulent intent. See Patterson, 216 Va. at 308, 218 S.E.2d at 436. Here, Sykes offered no evidence at trial to rebut the statutory presumption.

Sykes further points out that the term "account closed" appears in Code § 18.2-184 but not in Code § 18.2-183. Citing the rule of statutory interpretation stated in Williams v. Matthews, 248 Va. 277, 284, 448 S.E.2d 625, 629 (1994), that, "[w]hen a statute contains a given provision with reference to one subject, the omission of such provision from a similar statute dealing with a related subject is significant to show the existence of a different legislative intent," he argues the omission of the term "account closed" in Code § 18.2-183 demonstrates the legislature's intent to exclude the act of writing a check on a closed account from operation of the presumption of fraudulent intent contained in that statute. Sykes's reliance on the rule in Williams is misplaced.

Code § 18.2-184 provides:

> In any prosecution or action under the preceding sections, any notation attached to or stamped upon a check, draft or order which is refused by the drawee because of lack of funds or credit, bearing the terms "not sufficient funds," "uncollected funds," "account closed," or "no account in this name," or words of similar import, shall be prima facie evidence that such notation is true and correct.

Code § 18.2-184 is a rule of evidence that, in conjunction with Code § 18.2-183, aids the Commonwealth in proving a drawer's fraudulent intent in cases like this. It allows proof of the lack of funds in an account or the absence of an account to be established simply by the language of the drawee bank's stamp on a check identifying the reason the check was refused. As listed in Code § 18.2-184, the terms "not sufficient funds" and "uncollected funds" both indicate that the check was refused by the drawee because there were insufficient funds in the existing account

upon which the check was drawn to cover the check. Such evidence, if unrebutted, would invoke the presumption prescribed in the first paragraph of Code § 18.2-183. Conversely, the terms "account closed" and "no account in this name" both indicate that the check was refused because the account upon which the check was drawn did not exist. That evidence would give rise, if unrebutted, to the presumption at issue here, which is set forth in the last paragraph of Code § 18.2-183. Thus, rather than showing that the legislature intended to exclude closed accounts from the operation of Code § 18.2-183's presumption of fraudulent intent, as Sykes claims, the language of Code § 18.2-184 clearly places one who writes a check on a closed account within the scope of Code § 18.2-183. "Provisions in one act which are omitted in another on the same subject matter will be applied when the purposes of the two acts are consistent." 2B Norman J. Singer, Statutes and Statutory Construction § 51.02 (6th ed. 2000).

Lastly, Sykes asserts that one who has a closed account could still be extended credit by the bank based on that account. Sykes, however, points to no evidence in the record, and we find none, to support that assertion. Clearly, though, if that were to occur in a particular case, the defendant could simply present evidence of it to rebut the presumption arising under Code § 18.2-183. Here, as previously stated, Sykes offered no evidence to rebut the presumption.

For these reasons, we hold that the trial court properly applied the rebuttable presumption of Code § 18.2-183 in finding Sykes guilty of issuing the five bad checks. Accordingly, we affirm Sykes's convictions.

Affirmed.