COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Beales and Powell
Argued at Richmond, Virginia


TONYA SERENA CHARLES

                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 1054-10-2              JUDGE RANDOLPH A. BEALES
                                                         APRIL 19, 2011

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Harold M. Burgess, Judge[1]

Todd M. Ritter (Travis R. Williams; Daniels & Morgan, on brief),
for appellant.

John W. Blanton, Assistant Attorney General (Kenneth T. Cuccinelli,
II, Attorney General, on brief), for appellee.


Tonya Serena Charles (appellant) was convicted in a bench trial of two charges of uttering

bad checks, in violation of Code § 18.2-181.  On appeal, appellant argues that the evidence was

insufficient to convict her of these offenses.  For the following reasons, we affirm both convictions.

I. BACKGROUND

On Friday, March 14, 2008, appellant cashed a check for $225 at Styles Bi-Rite (the

store), a convenience store in Chesterfield County.  On the following day, Saturday, March 15,

2008, appellant cashed another check for $200 at that store.  Both of appellant's checks were

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge Burgess presided at appellant's sentencing hearing.  Judge Timothy J. Hauler
presided at the trial.

written on her checking account at Connects Federal Credit Union (Connects).[2]  The store

presented both checks to Connects for payment on the next business day, Monday, March 17, 2008.

However, Connects twice refused payment for appellant's checks – first on March 21, 2008,

because there were insufficient funds in appellant's account at Connects; and then on March 28,

2008, because appellant's account at Connects had been closed.

On April 11, 2008, the store sent a certified letter to appellant at her last known address

(which was also the address printed on her Connects checks) demanding payment for the refused

checks within five days.  The store's certified letter was returned, undelivered, by the post office –

and was marked "RETURN TO SENDER.  REFUSED.  UNABLE TO FORWARD."[3]

At trial, appellant claimed that the checks she cashed at the store on March 14 and 15,

2008, should have been covered by Connects' overdraft protection program.  Under this

program, according to appellant, Connects covered all checks up to $1,000.  Because Connects

charged a $45 fee for every check drawn on insufficient funds, however, appellant testified that

she experienced financial difficulties due to the accumulation of overdraft fees, resulting in

eviction from her apartment in March 2008.  Thus, while appellant testified that she thought

Connects would cover these two checks when she cashed them at the store on March 14 and 15,

2008, she also acknowledged at trial that she was not sure how much money she had in her

checking account at that time.

---

[2] According to the store's vice president, appellant registered for its check cashing system in August 2007.  The address appellant gave upon registration was the same address reflected on the checks that she cashed at the store on March 14 and 15, 2008.

[3] In March 2009, approximately a year after appellant cashed these two checks at the store, a Chesterfield County police officer informed appellant that there was an outstanding arrest warrant for her for uttering bad checks.  Two months later, appellant paid the store for the amount of the checks and associated fees.

Appellant testified that she withdrew from the overdraft protection program at some point soon after cashing these checks at the store on March 14 and 15, 2008, and she also testified that she met with the Connects branch manager to close her checking account approximately two weeks after cashing these checks. Appellant claimed that the checks she cashed at the store on March 14 and 15, 2008, did not come up during her review of the checking account with the branch manager when she closed the account.

Appellant denied intending to cash any "unworthy" checks at the store. She claimed that she never received the store's certified demand letter because she had been evicted from her apartment by the time the letter arrived there and she had left no forwarding address. Appellant acknowledged having prior felony convictions.

In her motion to strike, appellant argued that, although she was suffering from financial difficulties on March 14 and 15, 2008, the evidence did not prove that she intended to defraud the store when she cashed the checks for $225 and $200 on those dates. Therefore, she argued that the evidence was insufficient to convict her under Code § 18.2-181.

Rejecting appellant's argument, the trial court found her guilty of uttering bad checks "upon all competent evidence."

II. ANALYSIS

A. Standard of Review

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), "[w]e must

- 3 -

instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). See also Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

### B. Bad Check Offenses Under Code § 18.2-181

Pursuant to Code § 18.2-181, which is commonly known as the bad check statute,

> [a]ny person who, with intent to defraud, shall make or draw or utter or deliver any check, draft, or order for the payment of money, upon any bank, banking institution, trust company, or other depository, knowing, at the time of such making, drawing, uttering or delivering, that the maker or drawer has not sufficient funds in, or credit with, such bank, banking institution, trust company, or other depository, for the payment of such check, draft or order, although no express representation is made in reference thereto, shall be guilty of larceny; and, if this check, draft, or order has a represented value of $ 200 or more, such person shall be guilty of a Class 6 felony.

"The 'Bad Check' statute is 'specifically aimed to discourage the giving of bad checks for what purports to be a cash purchase when the drawer has, instead of the present means, only a vague intention to make the check good some time in the future.'" Bagheri v. Commonwealth, 12 Va. App. 1071, 1076, 408 S.E.2d 259, 263 (1991) (quoting Cook v. Commonwealth, 178 Va. 251, 259, 16 S.E.2d 635, 638 (1941)).

Code § 18.2-181 "requires the Commonwealth to establish both the intent to defraud and knowledge of insufficient funds in order to convict the defendant." Huntt v. Commonwealth, 212 Va. 737, 739, 187 S.E.2d 183, 185 (1972) (interpreting former Code § 6.1-115, the predecessor to Code § 18.2-181). "Such intent is an indispensable element of the crime and the burden is upon

- 4 -

the Commonwealth to prove its existence at the time of drawing or uttering the check." Bray v. Commonwealth, 9 Va. App. 417, 422, 388 S.E.2d 837, 839 (1990).

### C. Rebuttable Presumption Under Code § 18.2-183

"Since the drawer's state of mind is difficult to prove, the General Assembly created 'a rebuttable presumption of the necessary intent and knowledge if a dishonored check is not paid within five days after giving of the notice specified in the statute.'" Bagheri, 12 Va. App. at 1074, 408 S.E.2d at 262 (quoting Huntt, 212 Va. at 739, 187 S.E.2d at 186). Thus,

> Code § 18.2-183 provides that when a check is returned by the drawee bank "because of lack of funds or credit," such return constitutes "prima facie evidence of intent to defraud or of knowledge of insufficient funds in, or credit with, such bank," unless the maker, within five days after receiving written notice of dishonor by certified or registered mail, pays the holder the amount due.

Bray, 9 Va. App. at 423, 388 S.E.2d at 840 (internal quotation marks of Code § 18.2-183 added).

The rebuttable presumption under Code § 18.2-183 is "a rule of evidence upon which the Commonwealth may rely in facilitating proof of the fraudulent intent of the drawer." Id. This presumption can be rebutted if the defendant introduces credible evidence explaining or excusing her conduct. Sykes v. Commonwealth, 42 Va. App. 581, 588, 593 S.E.2d 545, 548 (2004); see Johnson v. Commonwealth, 188 Va. 848, 855, 51 S.E.2d 152, 155 (1949); cf. Hodge v. Commonwealth, 217 Va. 338, 341, 228 S.E.2d 692, 695 (1976) ("[N]either the Due Process Clause nor Mullaney [v. Wilbur, 421 U.S. 684 (1975),] prohibits the use of presumptions or inferences as procedural devices to shift to the accused the burden of producing some evidence contesting the otherwise presumed or inferred fact. These devices, however, must satisfy certain due process requirements, and the ultimate burden of proof beyond a reasonable doubt must remain upon the prosecution.").

### D. Whether Prima Facie Evidence of Guilt Was Rebutted

During oral argument before this Court, appellant's counsel conceded that the Commonwealth was entitled to the rebuttable presumption under Code § 18.2-183 because appellant did not pay the amount due to the store within five days of the store's giving of notice as specified by this statute.[4] Thus, under these circumstances, the refusal of appellant's checks for lack of funds constituted prima facie evidence of her knowledge of the lack of sufficient funds in her checking account and her intent to defraud when she cashed the checks at the store on March 14 and 15, 2008, since she did not pay the amount due within five days of the store's giving her notice under the statute. See Code § 18.2-183.

Under Code § 18.2-183, therefore, the factfinder was certainly permitted to infer appellant's knowledge of insufficient funds and her intent to defraud, subject to appellant's opportunity then to produce credible evidence contesting those inferences. See Wilson v. Commonwealth, 225 Va. 33, 41, 301 S.E.2d 1, 5 (1983) (explaining that Virginia's "general rule

---

[4] The relevant portion of Code § 18.2-183 provides:

> Notice mailed by certified or registered mail, evidenced by return receipt, to the last known address of the maker or drawer shall be deemed sufficient and equivalent to notice having been received by the maker or drawer.

> If such check, draft or order shows on its face a printed or written address, home, office, or otherwise, of the maker or drawer, then the foregoing notice, when sent by certified or registered mail to such address, with or without return receipt requested, shall be deemed sufficient and equivalent to notice having been received by the maker or drawer, whether such notice shall be returned undelivered or not.

Here, appellant concedes that the notice provision in Code § 18.2-183 was satisfied because the store's demand letter was sent to her last known address – which was also the address printed on her checks. Although appellant testified that she never received the demand letter because she had already been evicted from her apartment, her counsel clarified during oral argument before this Court that her testimony is relevant to the issue of whether she rebutted the prima facie evidence of her guilt under Code § 18.2-183.

is to give rebuttable presumptions permissive or burden-of-production-shifting effect only"); Dobson v. Commonwealth, 260 Va. 71, 74-75, 531 S.E.2d 569, 571 (2000) ("[T]he Due Process Clause does not prohibit the use of a permissive inference as a procedural device that shifts to a defendant the burden of producing some evidence contesting a fact that may otherwise be inferred, provided that the prosecution retains the ultimate burden of proof beyond a reasonable doubt."); see also Hodge, 217 Va. at 342, 228 S.E.2d at 695 (noting that the burden of production may "shift to the accused to neutralize, by evidence raising a reasonable doubt, a prima facie showing by the Commonwealth of guilt"). Relying on her own trial testimony, appellant argues that she rebutted the prima facie evidence that she had knowledge of insufficient funds in her checking account and that she intended to defraud the store.

Here, appellant testified that she believed that the $225 check and the $200 check that she cashed at the store on March 14 and 15, 2008 (respectively) would be covered by Connects' overdraft protection program – which, according to appellant, covered all checks up to $1,000. However, appellant also testified that she was dissatisfied with this program due to the $45 overdraft fee for each overdrawn check – and that she withdrew from the program soon after cashing these checks.

The record below established that the store presented these checks to Connects on the next business day, Monday, March 17, 2008, and that Connects refused both of these checks for insufficient funds four days later. Appellant introduced no evidence explaining why these checks were not covered by the credit union's overdraft protection program. Indeed, appellant presented no evidence reflecting or documenting that she was actually enrolled in the overdraft protection program or indicating the specific provisions of that program – aside from her own testimony, which the trial court was entitled to reject. See Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998) ("In its role of judging witness credibility, the

fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt.").

Given that these checks were refused for insufficient funds, the trial court was entitled to infer that appellant was not enrolled in the overdraft protection program when she cashed these checks or that she knew she would not be enrolled in the program when the store presented the checks to Connects for payment. See Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63-64 (2010) (stating that appellate courts should defer to "any reasonable and justified inferences the fact-finder may have drawn from the facts proved"). A rational factfinder, therefore, was certainly not required to find that appellant's testimony concerning the overdraft protection program rebutted the Commonwealth's prima facie case under Code § 18.2-183.

Furthermore, appellant cannot rely on her testimony about the closing of her credit union checking account to rebut the Commonwealth's prima facie case. Appellant testified that she and the Connects branch manager "review[ed] all the checks that had come through" and discussed "what needed to be done to have them paid." According to appellant, this review occurred approximately two weeks after she cashed the checks in question at the store. "At that time," appellant testified, "I did not see any checks from Styles Bi-Rite presented to the account." When asked if she was aware these checks cashed at the store "were out there," appellant replied, "I can't attest to that." However, the trial court was certainly entitled to infer that appellant remembered cashing two checks totaling $425 only two weeks earlier – and that she knew that those checks had not yet been honored by her credit union when she decided to close her checking account.

In addition, appellant testified that she was having financial difficulties when she cashed the checks at the store on March 14 and 15, 2008, and that she was evicted from her apartment "[r]ight around the beginning of March." Based on this testimony, the trial court was entitled to

infer that appellant, who was in financial trouble, cashed these checks on March 14 and 15, 2008, after she had been evicted from the residence on file with the store and reflected on her checks – and that she chose not to inform the store that she no longer lived at this address (and did not indicate a new address) in order to make herself more difficult to locate.

Thus, while appellant attempted to rebut the Commonwealth's prima facie case through her own testimony, the trial court (acting as factfinder here) clearly found that appellant's explanations lacked credibility and did not overcome the rebuttable presumption under Code § 18.2-183.  See Johnson, 188 Va. at 855, 51 S.E.2d at 155.  On appeal, appellant fails to establish that the trial court's guilty verdicts were plainly wrong or unsupported by the evidence.  See Code § 8.01-680.  Accordingly, a rational factfinder certainly could have found beyond a reasonable doubt that appellant violated Code § 18.2-181 on both March 14, 2008 and March 15, 2008.

## III. CONCLUSION

The evidence was sufficient beyond a reasonable doubt to conclude that appellant violated Code § 18.2-181 on March 14, 2008 and again on March 15, 2008.  Accordingly, for the foregoing reasons, we affirm appellant's convictions.

Affirmed.