**Salem**

HARRIETTE C. BRAY,

s/k/a HARRIETTE COLLINS BRAY

v.

COMMONWEALTH OF VIRGINIA

No. 0324-88-3

Decided February 13, 1990

418

COUNSEL

E. L. Motley, Jr., for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

Opinion

**COLE, J.**—Two principal issues are presented in this appeal. The first is whether one can be convicted under the bad check law, Code § 18.2-181, for passing a worthless check in payment of a security deposit upon the rental of real estate. Answering the question affirmatively, we uphold Bray's conviction under Code § 18.2-181. The second issue is whether one can be convicted of larceny by false pretenses, Code § 18.2-178, for giving a worthless check for the advance payment of the first month's rent on residential real estate and, in return, receiving the key to the premises. Answering the question in the negative, we reverse Bray's conviction under Code § 18.2-178.

On April 27, 1987, Bray and Vicky Linn executed a lease for residential property Linn owned in Pittsylvania County. The lease provided for a one year term commencing May 1, 1987, at a rental of $600 per month. Upon execution of the lease, Bray gave Linn a $600 check for the security deposit required by the lease to insure full and faithful performance by Bray of the conditions of the lease. A day or two prior to May 1, 1987, Linn and Bray met at the property where Bray gave Linn a $440 check for the first month's rent.[1] The rent check was post-dated May 1, 1987, to coincide with the effective date of the lease. Upon receipt of the check, Linn gave Bray a key to the property.

After Linn deposited the checks, they were returned by Bray's bank marked "account closed."[2] Linn contacted Bray on several occasions concerning payment of the checks. Receiving no satisfaction, she employed an attorney who sent a letter by certified mail, return receipt requested, to Bray demanding payment of both checks within five days in accord with Code § 18.2-183. Bray received the letter and signed for it but failed to pay the checks. The Bray family lived on Linn's property without paying rent for approximately four months until Linn obtained an eviction order. Linn also got a civil judgment against Bray for damages.

---

[1] While the monthly rent specified by the lease was $600, Bray had agreed to repair the access road to the property in return for a reduction of $160 in the first month's rent.

[2] The parties stipulated that Bray's bank account had been closed since August 1986.

Bray was indicted for drawing knowingly, with intent to defraud, a worthless check payable to Vicky Linn in the amount of $600, in violation of Code § 18.2-181. She was also indicted for obtaining a key of a value of less than $200 from Vicky Linn by a false pretense with intent to defraud, in violation of Code § 18.2-178. In a bench trial she was convicted of both offenses and this appeal followed.

## I.

Bray was charged under Code § 18.2-181[3] for issuance of the worthless $600 security deposit check. In 1978, the legislature amended Code § 18.2-181 and added the last paragraph concerning "present consideration for goods or services." Bray contends that the statute does not make the giving of a bad check a criminal offense in all circumstances. While the rental transaction was not governed by the Residential Landlord and Tenant Act, she argues that the same principles apply concerning security deposits generally.[4] She maintains that the security funds belong to her and will remain so until some future contingency occurs. She also argues that, as a result of a 1978 amendment to Code § 18.2-181, the statute applies only to checks given "as a present consideration for goods or services," citing as authority a statement made by one justice of the Supreme Court that not all bad checks give rise to criminal prosecutions — a criminal sanction applies "only when a person with the requisite criminal intent utters a worthless check as a present consideration for cash or a cash purchase." *See Payne*

---

[3] Code § 18.2-181 states:

Any person who, with intent to defraud, shall make or draw or utter or deliver any check, draft, or order for the payment of money, upon any bank, banking institution, trust company, or other depository, knowing, at the time of such making, drawing, uttering or delivering, that the maker or drawer has not sufficient funds in, or credit with, such bank, banking institution, trust company, or other depository, for the payment of such check, draft or order, although no express representation is made in reference thereto, shall be guilty of larceny; and, if this check, draft, or order has a represented value of $200 or more, such person shall be guilty of a Class 6 felony. In cases in which such value is less than $200, the person shall be guilty of a Class 1 misdemeanor.

The word "credit" as used herein, shall be construed to mean any arrangement or understanding with the bank, trust company, or other depository for the payment of such check, draft or order.

Any person making, drawing, uttering or delivering any such check, draft or order in payment as a present consideration for goods or services for the purposes set out in this section shall be guilty as provided herein.

[4] *See* Code § 55-248.11.

*v. Commonwealth*, 222 Va. 485, 490, 281 S.E.2d 873, 876 (1981)(Thompson, J., dissenting). We disagree.

The Commonwealth concedes that a security deposit on a lease of real estate is not "a present consideration for goods or services." But it argues that the amendment to Code § 18.2-181 did not limit the application of the statute's first paragraph, quoting in support of this proposition an opinion issued by the Attorney General. 1979-1980 Report of the Attorney General 42, 43. The Commonwealth also cites *Payne*, in which the Supreme Court said " '[i]t need not be shown . . . that anything was received in return for the check,' for 'the offense is complete when, with the requisite intent, a person utters a check he knows to be worthless.' " *Id.* at 488, 281 S.E.2d at 874 (quoting *Warren v. Commonwealth*, 219 Va. 416, 422, 247 S.E.2d 692, 695 (1978)).

*Payne* does not control the issue before us because it construed the version of Code § 18.2-181 that existed before the 1978 amendment. The amendment has yet to be construed by a Virginia appellate court.[5]

■ We are bound to follow certain principles in construing Code § 18.2-181. "[T]he plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow or strained construction." *Crews v. Commonwealth*, 3 Va. App. 531, 536, 352 S.E.2d 1, 3 (1987)(quoting *Turner v. Commonwealth*, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983)). Also, "because the statute in question is penal in nature, it must be strictly construed against the state and limited in application to cases falling clearly within the language of the statute." *Id.* at 536, 352 S.E.2d at 3.

The early history of the "bad check" statute and the various amendments thereto were reviewed by the Virginia Supreme Court in *Cook v. Commonwealth*, 178 Va. 251, 16 S.E.2d 635

---

[5] Justice Thompson did observe in his dissent to *Payne* that he believed the amendment was intended to modify the entire statute:

The present statute, Code § 18.2-181, makes Payne's offense larceny. This poses the question "larceny of what?" In 1978, the legislature clarified the statute's purpose with this amendment. . . . The Bad Check Act applies a criminal sanction only when a person with the requisite criminal intent utters a worthless check as a present consideration for cash or a cash purchase.

*Payne*, 222 Va. at 490, 281 S.E.2d at 876 (Thompson, J., dissenting).

(1941). The first paragraph of the statute, containing the definition of the offense and designating it as larceny, remains virtually unchanged since the statute was originally passed by the General Assembly in 1920. *See Cook*, 178 Va. at 256-57, 16 S.E.2d at 636-37. Through the years, the statute has been used to prosecute the act of presenting a bad check for cash or a cash purchase of property, with the intent to defraud the owner thereof. *See Turner v. Brenner*, 138 Va. 232, 121 S.E. 510 (1924)(bags of flour); *Cook v. Commonwealth*, 178 Va. 251, 16 S.E.2d 635 (1941)(chickens); *Rosser v. Commonwealth*, 192 Va. 813, 66 S.E.2d 851 (1951)(automobile); *Hubbard v. Commonwealth*, 201 Va. 61, 109 S.E.2d 100 (1959)(automobiles); *Rinkov v. Commonwealth*, 213 Va. 307, 191 S.E.2d 731 (1972)(merchandise and cash); *Patterson v. Commonwealth*, 216 Va. 306, 218 S.E.2d 435 (1975)(cash); *Warren v. Commonwealth*, 219 Va. 416, 247 S.E.2d 692 (1978)(cash); *Edwards v. Commonwealth*, 227 Va. 349, 315 S.E.2d 239 (1984)(cash).

Since the first paragraph of the statute before 1978 had been applied to bad checks given as present consideration for goods, the most reasonable interpretation of legislative intent when adopting the 1978 amendment would be that the legislature intended to include bad checks issued as present consideration for services and intended to exclude bad checks given as payment for past debts or as gifts. The amendment does not otherwise alter or limit the scope of the first paragraph as it existed prior to 1978.

 Under the bad check statute, the gravamen of the offense is the intent to defraud. *Huntt v. Commonwealth*, 212 Va. 737, 739, 187 S.E.2d 183, 185 (1972). Intent to defraud means that the defendant intends to "deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter, or terminate a right, obligation or power with reference to property." Black's Law Dictionary 381 (5th ed. 1979). Such intent is an indispensable element of the crime and the burden is upon the Commonwealth to prove its existence at the time of drawing or uttering the check. *Huntt*, 212 Va. at 739, 187 S.E.2d at 185. The statute requires the Commonwealth to establish both the intent to defraud and knowledge of insufficient funds in order to convict the defendant. *Id.* at 739, 187 S.E.2d at 185.

 Code § 18.2-183 provides that when a check is returned by the drawee bank because of lack of funds or credit, such return constitutes prima facie evidence of intent to defraud or of knowledge of insufficient funds in, or credit with, such bank, unless the maker, within five days after receiving written notice of dishonor by certified or registered mail, pays the holder the amount due. This is a rule of evidence upon which the Commonwealth may rely in facilitating proof of the fraudulent intent of the drawer. *Cook*, 178 Va. at 258, 16 S.E.2d at 638.

 Bray was not charged with common law larceny. She was indicted for making or drawing a bad check under Code § 18.2-181. To prove a bad check offense, it is not necessary that anything be received in return for the check. The offense is complete when, with intent to defraud, a person makes or draws or utters a check he knows to be worthless. *Payne*, 222 Va. at 488, 281 S.E.2d at 874. In *Payne*, the Supreme Court held that the giving of a bad check in exchange for partnership assets, which were not property subject to common law larceny, was proscribed by Code § 18.2-181 as it existed prior to the 1978 amendment. The present case presents a similar situation. Bray gave Vicky Linn a worthless check for the security deposit as present consideration to obtain a leasehold interest in the residential property owned by Linn on which Bray subsequently lived for approximately four months without paying the agreed upon rent.

The material facts disclosed by the record are not in dispute. Bray made and delivered two checks drawn on a bank for the payment of money. The bank refused to honor the checks because the account was closed. Linn gave Bray written notice of dishonor by certified mail. Bray signed the return receipt, acknowledging notice of the letter. She failed to pay the checks within five days. These facts constitute prima facie evidence of intent to defraud or of knowledge of insufficient funds. There is no evidence in the record sufficient to overcome the statutory presumption. Under the first paragraph of Code § 18.2-181, Bray was clearly guilty of violating the bad check statute by giving a bad check for the security deposit in order to induce Linn to alter her rights in the residential property by executing the lease.

The Commonwealth admits that a check given as a security deposit to cover damages to real estate does not constitute a check

"in payment as present consideration for goods or services" and thus is not covered by the third paragraph of Code § 18.2-181. Bray's check does, however, come within the scope of the first paragraph of Code § 18.2-181 for the reasons discussed above. We, therefore, find that the trial court did not err in convicting Bray of violating Code § 18.2-181.

## II.

Bray also challenges her conviction for larceny by false pretenses of the key to Linn's real property, in violation of Code § 18.2-178. Bray could not have been convicted of larceny by false pretenses of the residential real estate itself because she never obtained title to it. *See Baker v. Commonwealth*, 225 Va. 192, 194, 340 S.E.2d 788, 789 (1983).

"An essential element of larceny by false pretenses is that both title to and possession of property must pass from the victim to the defendant (or his nominee)." *Cunningham v. Commonwealth*, 219 Va. 399, 402, 247 S.E.2d 683, 685 (1978). "The gravamen of the offense . . . is the obtainment of ownership of property . . . ." *Quidley v. Commonwealth*, 221 Va. 963, 966, 275 S.E.2d 622, 624 (1981). False pretenses involves a change in ownership as well as possession. The defendant argues that no title to real estate passed and that the Commonwealth's characterization of the transaction as the theft of a key is simply an attempt to charge indirectly what they cannot do directly, *i.e*, support a false pretenses conviction for giving a worthless check for the first month's rent.

The Commonwealth apparently concedes that the false pretenses charge could not be maintained for the first month's rent because it only indicted Bray for obtaining the key to Linn's property by false pretenses with the intent to defraud. The Commonwealth, however, contends that Bray obtained both possession of and title to the key because there was no evidence in the lease or elsewhere that Bray was obligated to return it. Since title to the key passed to Bray, the Commonwealth argues that the requirements of larceny by false pretenses have been proven. We disagree.

The worthless check was not written to gain ownership of the key, but to secure the owner's signature on the lease and posses-

sion of the premises, which, as previously stated, could not be the subject of larceny by false pretenses because Linn retained ownership of the premises. Ownership to the key does not pass to a tenant but is merely an accessory to the lease giving the tenant the means to secure and obtain access to the property during the term of the lease. It must be returned to the owner upon termination of the lease. Because the Commonwealth failed to prove beyond a reasonable doubt that Bray committed larceny by false pretenses, the conviction is reversed.

In summary, we affirm Bray's conviction for passing a worthless check in payment of a residential rental security deposit. We reverse Bray's conviction under Code § 18.2-178 for the crime of larceny by false pretenses.

*Affirmed in part,*
*reversed in part.*

Koontz, C.J., and Keenan, J., concurred.