COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judge Alston and Senior Judge Annunziata
Argued at Salem, Virginia


FRANK LEO COX, III

                                  MEMORANDUM OPINION[*] BY
v.      Record No. 1527-10-3      CHIEF JUDGE WALTER S. FELTON, JR.
                                           AUGUST 23, 2011
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
Joseph W. Milam, Jr., Judge

Jason S. Eisner for appellant.

Karen Misbach, Assistant Attorney General (Kenneth T. Cuccinelli,
II, Attorney General; Joshua M. Didlake, Assistant Attorney General,
on brief), for appellee.


Frank Leo Cox, III ("appellant") was convicted by the Circuit Court of the City of Danville

("trial court") of presenting two or more bad checks in return for cash, in violation of Code

§ 18.2-181.1. On appeal, appellant contends that the trial court erred in requiring him to present

evidence in order to be found not guilty. In addition, appellant contends the evidence was

insufficient to prove that he presented the checks with the intent to defraud. For the following

reasons, we affirm appellant's conviction.

I. BACKGROUND

"When considering a challenge to the sufficiency of the evidence to sustain a conviction,

this Court reviews 'the evidence in the light most favorable to the prevailing party at trial and

consider[s] all inferences fairly deducible from that evidence.'" Clark v. Commonwealth, 279 Va.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

636, 640, 691 S.E.2d 786, 788 (2010) (alteration in original) (quoting Jones v. Commonwealth, 276 Va. 121, 124, 661 S.E.2d 412, 414 (2008)).

The evidence presented at trial proved that on July 24, 2008, appellant wrote a $350 check payable to Shadowood Mart, a convenience store located in Danville, Virginia, in return for cash. Appellant's mother, Patsy Cox, then an employee of Shadowood Mart, cashed the check for appellant, after first obtaining permission from Abdul Kahn ("Kahn"), the store owner. Four days later, on July 28, 2008, appellant presented another check payable to Shadowood Mart in the amount of $150, which his mother also cashed. Kahn first became aware of the second check when he was making a deposit on the day after it had been cashed. Appellant's mother testified that she asked Kahn to hold the checks for one week before he deposited them. However, Kahn testified that he did not recall being asked to hold the checks.

Shortly after Kahn presented the cashed checks for payment, the bank returned them to him with the notation that the account on which the checks were drawn did not contain sufficient funds to pay them. Kahn informed appellant's mother that the bank returned the checks unpaid and the reason why. Appellant's mother promised Kahn she would contact appellant about the checks. At the time appellant wrote the checks, he lived with his mother in Virginia. However, by August 2008 appellant had moved to North Carolina. Appellant's mother testified that she was unable to contact him. Thereafter, in September 2008, appellant's mother suffered a stroke and, as a result, was not able to "fully communicate" with appellant until October 2008.[1] Appellant's mother testified that she never told appellant that his checks to Shadowood Mart were returned for insufficient funds.

---

[1] Appellant's mother testified that she did not return to work at Shadowood Mart after her stroke.

On March 11, 2009, Kahn sent appellant two separate letters by certified mail to two separate addresses demanding full payment of the dishonored checks. The addresses to which the letters were sent were the address listed for appellant on the face of the checks and appellant's mother's home address. The letter sent to the address on the check was returned to Kahn with the notation that appellant had moved from that address and left no forwarding address. The letter sent to appellant's mother's address was returned to Kahn as unclaimed.

Appellant was arrested on January 27, 2010, for violating Code § 18.2-181.1.[2] At appellant's bench trial, appellant's mother and Kahn each testified for the Commonwealth. At the conclusion of the Commonwealth's evidence, appellant moved to strike the evidence, arguing that the evidence was insufficient to show that he possessed the requisite intent to defraud when he presented the checks for payment. The trial court found the Commonwealth's evidence sufficient to establish a prima facie case of appellant's intent to defraud under Code § 18.2-183 and denied appellant's motion to strike.

Following the trial court's ruling, appellant presented no evidence and renewed his motion to strike. The trial court denied appellant's motion and found him guilty, stating,

> [T]he Court found the [statutory] presumption to be applicable in the case and the defense put on no evidence. . . . I mean the presumption, I think, does apply here which is the only thing the Court finds that the Commonwealth . . . because it's true, the Court cannot find actual notice based on the evidence the Commonwealth has presented other than the sending the notice required by the statute. . . . [The] Court's having to base its decision in this case purely on the Commonwealth's evidence. Certainly [appellant] has no obligation to testify or provide any evidence and exercise of that right cannot be held against [appellant] but I . . . having found that the . . . statute does provide prima facie evidence of intent and knowledge, I do find that notice was sent by certified mail, return receipt requested, although it was unclaimed to the address shown on the check. There were also, I

---

[2] Code § 18.2-181.1 prohibits the issuance of two or more checks with an aggregate value of $200 or more in a manner that violates Code § 18.2-181 (requiring proof of fraudulent intent to sustain a conviction for issuing bad checks).

mean, beyond that, [appellant's] mother, who accepted the checks, had some contact with [appellant] after . . . October, she having suffered a stroke. She did not say that they specifically discussed these checks, however, based on the . . . the notice, I think I have to find that the Commonwealth's witness did comply with the statute and that that provides prima facie evidence of intent so I have to find him guilty.

After this statement by the trial court, appellant's counsel stated that he believed that "the rationale behind the Court's finding required [appellant] to put on evidence." The trial court responded:

No, no, no, I said I'm relying on the Commonwealth's evidence and I said, I found earlier, the Commonwealth's evidence established compliance with the statute and that's how I've overruled the motion to strike. . . . I mean, I'm just simply making the point that there's no other evidence that the Court considers in the case. It's all the Commonwealth's evidence. The Court can't hold it against [appellant] the fact that he didn't present evidence but if the Commonwealth's . . . evidence provides evidence of guilt then that's what the Court has to rely on.

The following exchange then took place:

[APPELLANT]: For the record, Your Honor, we take exception to the Court's ruling based on burden shifting, if we would suggest.

THE COURT: Under the statute?

[APPELLANT]: Yes, Your Honor.

The trial court subsequently sentenced appellant to three years' incarceration with all three years suspended. This appeal followed.

## II. ANALYSIS

### A. Burden Shifting

Appellant asserts that the trial court erred in requiring him to present defense evidence to prove his innocence.[3]

---

[3] With all due respect to the concurrence's analysis, appellant did not raise constitutional or Due Process Clause arguments to the trial court, explicitly or implicitly. He did not cite any authority to the trial court to support any constitutional argument regarding the statute or its

- 4 -

In a prosecution under Code § 18.2-181 (issuing bad checks), the Commonwealth may

rely on the rebuttable presumption of intent to defraud provided by Code § 18.2-183. Code

§ 18.2-183 provides,

> In any prosecution or action under [Code § 18.2-181 and Code
> § 18.2-181.1], the making or drawing or uttering or delivery of a
> check . . . which is refused by the drawee because of lack of funds
> or credit shall be *prima facie evidence of intent to defraud or of
> knowledge of insufficient funds* in, or credit with, such bank,
> banking institution, trust company or other depository unless such
> maker or drawer, or someone for him, shall have paid the holder
> thereof the amount due thereon, together with interest, and protest
> fees (if any), within five days after receiving written notice that
> such check . . . has not been paid to the holder thereof. Notice
> mailed by certified or registered mail, evidenced by return receipt,
> to the last known address of the maker or drawer shall be deemed
> sufficient and equivalent to notice having been received by the
> maker or drawer.

application to the evidence presented at trial. We will not consider an alternative argument
raised for the first time on appeal. See Rule 5A:18. Rule 5A:18 "applies even to [appellant's]
constitutional claims." Deal v. Commonwealth, 15 Va. App. 157, 161, 421 S.E.2d 897, 900
(1992).

> The laudatory purpose behind Rule 5A:18, and its equivalent
> Supreme Court Rule 5:25, frequently referred to as the
> contemporaneous objection rules, is to require that objections be
> promptly brought to the attention of the trial court with sufficient
> specificity that the alleged error can be dealt with and timely
> addressed and corrected when necessary. The rules promote
> orderly and efficient justice and are to be strictly enforced except
> where the error has resulted in manifest injustice. Errors can
> usually be corrected in the trial court, particularly in a bench trial,
> without the necessity of appeal. Because our function is to review
> the rulings of the trial court, rather than superintend the
> proceedings, we will notice error for which there has been no
> timely objection only when necessary to satisfy the ends of justice.

Brown v. Commonwealth, 8 Va. App. 126, 131, 380 S.E.2d 8, 10 (1989). Appellant does not
argue that we should invoke either the good cause or ends of justice exceptions to Rule 5A:18.
See Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997). The Court
will not consider Rule 5A:18 exceptions *sua sponte*. See Edwards v. Commonwealth, 41
Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (en banc).

(Emphasis added).  In other words, Code § 18.2-183 provides "a rule of evidence upon which the Commonwealth may rely in facilitating proof of the fraudulent intent of the drawer."  Bray v. Commonwealth, 9 Va. App. 417, 423, 388 S.E.2d 837, 840 (1990).

Once the Commonwealth presents prima facie evidence as required by Code § 18.2-183, that evidence permits, but does not require, a reasonable trier of fact to find that at the time the dishonored check was presented, the accused intended to defraud his victim.  Stated differently, if the trier of fact accepts the Commonwealth's evidence as credible, a rebuttable presumption that the accused possessed the intent to defraud is established, "thereby shifting the burden of producing evidence to the defendant."  Charles E. Friend, The Law of Evidence in Virginia § 9-5 (6th ed. 2003) (noting that Code § 18.2-183 is "usually construed to create a rebuttable presumption, thereby shifting the burden of producing evidence to the defendant").  At no time during appellant's trial, however, did the trial court require appellant to produce evidence.[4] While a defendant may rely upon the Commonwealth's evidence to rebut the presumption, Hodge v. Commonwealth, 217 Va. 338, 343, 228 S.E.2d 692, 696 (1976), and is not required to "prove anything," he "[runs] the risk of not producing some evidence to rebut the presumption," Wilson v. Commonwealth, 225 Va. 33, 43, 301 S.E.2d 1, 6 (1983).

Nor did the court relieve the Commonwealth from its burden of persuasion.  "'A permissive inference does not relieve the [Commonwealth] of its burden of persuasion because it still requires the [Commonwealth] to convince the [trier of fact] that the suggested conclusion *should* be inferred based on the predicate facts proved.'"  Dobson v. Commonwealth, 260 Va. 71, 75, 531 S.E.2d 569, 572 (2000) (emphasis added) (quoting Francis v. Franklin, 471 U.S. 307, 314 (1985)).  See Ronald J. Bacigal, Virginia Criminal Procedure § 17:8 (2010-2011) ("What is

---

[4] The trial court repeatedly informed appellant that he was not required to produce evidence.  When appellant once again raised the issue during his sentencing hearing, the trial court reiterated that "[appellant] certainly has no obligation whatsoever to present evidence."

often referred to as a presumption is in reality a permissible inference. While a presumption requires the trier of fact to make a certain finding, a permissible inference merely permits, but does not require, the trier of fact to come to a certain conclusion.").

We conclude that from the evidence presented, the trial court did not require appellant to present evidence to find him not guilty. Instead, the trial court properly relied on the statutory rebuttable presumption from which it *could* find, but was not required to find, that appellant had the intent to defraud when he presented the worthless checks for payment to the store owner and properly imposed on the Commonwealth the ultimate burden of persuasion.

## B. Sufficiency of the Evidence

Appellant also contends that the trial court erred by finding the evidence was sufficient to prove that he issued the checks with the intent to defraud. Appellant asserts on appeal that the Commonwealth's own evidence rebuts the presumption created by Code § 18.2-183. He argues that the Commonwealth's evidence shows that he did not pay the checks after receipt of notice that Kahn had not been paid because he never received actual notice that the checks had not been paid, and not because he intended to defraud Kahn.[5]

In reviewing the sufficiency of the evidence,

> "we presume the judgment of the trial court to be correct," Broom
> v. Broom, 15 Va. App. 497, 504, 425 S.E.2d 90, 94 (1992), and
> "will not set it aside unless it is plainly wrong or without evidence
> to support it." Dodge v. Dodge, 2 Va. App. 238, 242, 343 S.E.2d
> 363, 365 (1986).

Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution,

---

[5] Appellant does not contest that the manner in which the certified letters were sent failed to meet the requirements of Code § 18.2-183.

*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

To sustain appellant's conviction for violating Code § 18.2-181.1, the Commonwealth was required to prove that appellant issued the checks with the intent to defraud. "Intent to defraud means that the defendant intends to 'deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter, or terminate a right, obligation or power with reference to property.'" Bray, 9 Va. App. at 422, 388 S.E.2d at 839 (quoting Black's Law Dictionary 381 (5th ed. 1979)).

Appellant argues that the statutory presumption created by Code § 18.2-183 was successfully rebutted by the Commonwealth's own evidence, which established that appellant never received actual notice that the checks had not been paid. Appellant's argument ignores the plain language of Code § 18.2-183, which provides, in pertinent part,

> If such check . . . shows on its face a printed or written address, home, office, or otherwise, of the maker or drawer, then the foregoing notice, when sent by certified or registered mail to such address, with or without return receipt requested, shall be deemed sufficient and equivalent to notice having been received by the maker or drawer, *whether such notice shall be returned undelivered or not.*

(Emphasis added).

Appellant additionally argues that the Commonwealth's evidence rebutted the presumption of intent to defraud under Code § 18.2-183 because Kahn sent the letters to him approximately seven months after he moved from Virginia to North Carolina. Whether the evidence is sufficient to rebut the presumption is a question for the fact finder to determine. See Moffit v. Commonwealth, 16 Va. App. 983, 987, 434 S.E.2d 684, 687 (1993). The record on appeal reflects that appellant gave the bad checks to his mother, to cash at her place of employment. Appellant left Virginia shortly after presenting the checks for payment, left no

forwarding address, and could not be contacted by Kahn or his mother. From the evidence presented at trial, the trial court was entitled to infer that appellant was aware that at the time he presented the checks to Shadowood Mart to cash, there were insufficient funds in his checking account to pay those checks when presented for payment.

Because the Commonwealth proved that Kahn sent, by certified mail, two letters to appellant at the address printed on the checks notifying appellant that the checks had not been paid and that thereafter appellant did not pay the amount due on the checks within five days as required by Code § 18.2-183, the evidence was sufficient to prove that appellant had the requisite intent to defraud. Appellant's conviction is affirmed.

<u>Affirmed.</u>

Alston, J., concurring.

I agree with the majority that the trial court did not require appellant to present evidence in order to be found not guilty and that the evidence was sufficient to prove that appellant presented the checks with the intent to defraud. However, I write separately to address the Due Process Clause issue I believe was appropriately raised by appellant's first assignment of error.

On appeal, appellant alleges that the trial court erred in "finding that [appellant] had to present evidence in his case in order to be found not guilty under the presumption created in" Code § 18.2-183. Through this argument, appellant raises the constitutional question of whether Code § 18.2-183 impermissibly shifts the burden of proof to a defendant.[6] I write separately here to expand upon the majority's implicit constitutional analysis and to clarify both the existing terminology regarding presumptions and their constitutional validity under the Due Process Clause. It is my view that the majority's failure to adequately set forth its reasoning in reaching

---

[6] Appellant's citation on brief to Hodge v. Commonwealth, 217 Va. 338, 342, 228 S.E.2d 692, 695 (1976), and his assertion that the shifting of the burden of persuasion to the accused is "constitutionally infirm" sufficiently raises the due process issue such that, in my view, the constitutional question must be thoroughly addressed by this Court.

In addition, I believe appellant adequately presented this constitutional question to the trial court. Rule 5A:18, as in effect at the time of appellant's trial, see Fails v. Va. State Bar, 265 Va. 3, 5 n.1, 574 S.E.2d 530, 531 n.1 (2003) (applying the Rule of Court in effect at the time of the proceedings below), simply stated that to satisfy the rule, an objection be stated "with the grounds therefor." Appellant fulfilled this requirement through his specific objection to the "burden shifting" of the trial court's ruling and his related objection to what appellant viewed as the trial court's requirement that appellant present evidence. Furthermore, appellant's failure to cite authority in support of his objection at trial is not fatal to consideration of his argument on appeal, as Rule 5A:18 "does not prohibit reliance on statutes or cases not presented to the trial court to support, on appeal, a position otherwise adequately presented at trial." Lash v. County of Henrico, 14 Va. App. 926, 929, 421 S.E.2d 851, 853 (1992) (en banc). In my view, appellant's statements at trial adequately presented appellant's belief that the trial court was interpreting Code § 18.2-183 in a manner that unconstitutionally shifted the burden of proof to appellant. Because appellant's objection fulfilled the main purpose of Rule 5A:18, "to afford the trial court an opportunity to rule intelligently on the issues presented," Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991), I believe Rule 5A:18 does not bar appellate consideration of the constitutional issue in this case.

its determination of this issue may unintentionally suggest a constitutionally incomplete methodology for resolution of the issue presented.

"[T]he Due Process Clause requires the prosecution to 'prove beyond a reasonable doubt every fact necessary to constitute the crime charged.'" Hodge v. Commonwealth, 217 Va. 338, 341, 228 S.E.2d 692, 695 (1976) (quoting Mullaney v. Wilbur, 421 U.S. 684, 685 (1975)). However, statutory presumptions do not necessarily unconstitutionally shift the burden of proof from the Commonwealth to a criminal defendant. See Cnty. Court of Ulster v. Allen, 442 U.S. 140, 156 (1979) (stating that "[i]nferences and presumptions are a staple of our adversary system of factfinding").

To understand the legal significance of the various "presumptions" which may exist in a statute purporting to establish prima facie evidence of an element of a crime, one must understand the terminology advanced in the caselaw defining the diverse sets and subsets of statutory presumptions. At the outset, it must be recognized that a statutory presumption may be mandatory or permissive. Mandatory presumptions instruct the trier of fact that it "*must* infer the presumed fact if the [Commonwealth] proves certain predicate facts." Francis v. Franklin, 471 U.S. 307, 314 (1985) (emphasis added). In contrast, permissive presumptions[7] "suggest[] to the [trier of fact] a possible conclusion to be drawn if the [Commonwealth] proves predicate facts, but do[] not require the [trier of fact] to draw that conclusion." Id. The United States Supreme

---

[7] I recognize that "[w]hat is often referred to as a presumption is in reality a permissible inference." Ronald J. Bacigal, Virginia Criminal Procedure § 17:8 (2010-2011). As Professor Bacigal explains, some courts and commentators interpret a "presumption" to place upon the opponent of the presumption "the burden of disproving the presumed fact." Id. Thus, some courts prefer the term "permissible inference," which makes clear that the burden of proof on an element of the crime is not unconstitutionally shifted to a criminal defendant. Id. To further highlight the journey through the terminology maze in this area of the law, I note that other courts have used the terms "permissive inference" and "permissive presumption" interchangeably. In the instant concurrence, I adopt the term "permissive presumption"; in doing so, I do not intend to imply that all permissive presumptions necessarily shift the burden of proof on an element of the crime to a criminal defendant.

Court has developed subsets of both the mandatory and permissive presumptions by recognizing that these presumptions can be rebuttable or irrebuttable.[8] See id. at 314 n.2. A rebuttable presumption *allows* (in the case of a permissive rebuttable presumption) or *requires* (in the case of a mandatory rebuttable presumption) the trier of fact "to find the presumed element unless the defendant persuades the [trier of fact] that such a finding is unwarranted." Id. In contrast, an irrebuttable "presumption removes the presumed element from the case once the [Commonwealth] has proved the predicate facts giving rise to the presumption." Id.; see also Black's Law Dictionary 1305 (9th ed. 2009) (defining "irrebuttable presumption" as "[a] presumption that cannot be overcome by any additional evidence or argument").[9]

I agree with the majority that Code § 18.2-183 creates a rebuttable presumption. See Huntt v. Commonwealth, 212 Va. 737, 739, 187 S.E.2d 183, 186 (1972) (interpreting Code § 6.1-117, the predecessor statute to Code § 18.2-183); Sykes v. Commonwealth, 42 Va. App. 581, 588, 593 S.E.2d 545, 548 (2004). However, the constitutionality of the rebuttable presumption created by Code § 18.2-183 also turns upon the classification of the presumption as

---

[8]Although the Francis Court uses the term "conclusive" presumption, 471 U.S. at 314 n.2, to avoid confusion, I use the term "irrebuttable" presumption. See Black's Law Dictionary 1305 (9th ed. 2009) (stating that "conclusive presumption" is also termed "irrebuttable presumption").

[9] For the sake of clarity, I emphasize that there are four recognized types of statutory presumptions: (1) mandatory rebuttable presumptions, which instruct the trier of fact that it *must* infer the presumed element if the Commonwealth proves certain predicate facts, but the presumption remains subject to rebuttal; (2) mandatory irrebuttable presumptions, which instruct the trier of fact that it *must* infer the presumed element if the Commonwealth proves certain predicate facts, regardless of any evidence tending to rebut the presumption; (3) permissive rebuttable presumptions, which allow but do not require the trier of fact to infer the presumed element if the Commonwealth proves certain predicate facts, but the presumption remains subject to rebuttal; or (4) permissive irrebuttable presumptions, which allow but do not require the trier of fact to infer the presumed element if the Commonwealth proves certain predicate facts, regardless of any evidence tending to rebut the presumption.
    The test for the constitutionality of each type of presumption differs, and in the instant case I address the constitutionality of only the permissive rebuttable presumption created by Code § 18.2-183.

mandatory or permissive. The majority *implicitly* holds that Code § 18.2-183 creates a permissive presumption when it states that the presumption in the instant case "'still requires the [Commonwealth] to convince the [trier of fact] that the suggested conclusion *should* be inferred based on the predicate facts proved,'" Dobson v. Commonwealth, 260 Va. 71, 75, 531 S.E.2d 569, 572 (2000) (emphasis added) (quoting Francis, 471 U.S. at 314), and when it states that "the trial court properly relied on the statutory rebuttable presumption from which it *could* find, but was not required to find, that appellant had the intent to defraud . . . ." However, I write separately not to challenge the result reached by the majority but in order to provide an explanation and rationale for this holding, and to explicate the test for the constitutionality of permissive rebuttable presumptions. Simply implying that the code section creates a permissive presumption without articulating why or how the Court has made this determination, and without explaining the constitutional ramifications of this classification, neither explains the analytical framework used to reach this conclusion nor adequately speaks to appellant's assignment of error in the instant case.

I would hold explicitly that Code § 18.2-183 creates a permissive presumption. While not all rebuttable presumptions are permissive presumptions, see Francis, 471 U.S. at 314 n.2, "our general rule is to give rebuttable presumptions permissive or burden-of-production-shifting effect only," Wilson v. Commonwealth, 225 Va. 33, 41, 301 S.E.2d 1, 5 (1983). This general rule applies even when the presumption "is construed to require the defendant[] to produce some evidence." Wilson, 225 Va. at 42, 301 S.E.2d at 5. As a result, I would hold that Code § 18.2-183 creates a permissive rebuttable presumption.

After classifying the presumption created by Code § 18.2-183 as a permissive rebuttable presumption, it is incumbent upon the Court in the instant case to determine whether the presumption satisfies the requirements of the Due Process Clause. The constitutional test for

- 13 -

rebuttable presumptions and the constitutional test for permissive presumptions are two separate lines of inquiry. A rebuttable presumption is constitutional "provided that the prosecution retains the ultimate burden of proof beyond a reasonable doubt." Dobson, 260 Va. at 75, 531 S.E.2d at 571. Permissive presumptions are constitutional as long as "the suggested conclusion is . . . one that reason and common sense justify in light of the proven facts before the [trier of fact]." Francis, 471 U.S. at 314-15. This standard for permissive presumptions is not satisfied if the Court determines that "there is no rational way the trier could make the connection permitted by the inference." Allen, 442 U.S. at 157.

The majority addresses the former test, but not the latter. I agree with the majority that the rebuttable nature of the permissive presumption created by Code § 18.2-183 does not render the statute unconstitutional by relieving the Commonwealth of the ultimate burden of proof beyond a reasonable doubt or requiring the defendant to present evidence. In this regard, a defendant may rely upon the Commonwealth's evidence to rebut the presumption, Hodge, 217 Va. at 343, 228 S.E.2d at 696, even though he "[runs] the risk of not producing some evidence to rebut the presumption," Wilson, 225 Va. at 43, 301 S.E.2d at 6.

However, the majority's analysis of the burden-shifting effect of Code § 18.2-183 ends here. In my view, the majority must next address whether the presumption created by Code § 18.2-183 satisfies the separate constitutional test for permissive presumptions. I would hold that the presumption created by Code § 18.2-183 satisfies the test for permissive presumptions under the Due Process Clause because it provides a rational mechanism to allow the trier of fact to make the connection permitted by the inference. Code § 18.2-183 allows the trier of fact to infer intent to defraud when a defendant does not pay the amount due on a check within five days of receiving actual or, under certain circumstances, constructive written notice that the check has not been paid to the holder. The connection between a defendant's failure to pay, despite actual

- 14 -

notice that his or her check has been dishonored, and a defendant's intent to defraud at the time of issuing the check is rational. In addition, the connection between a defendant's failure to provide the drawee with his or her correct address on the face of the check, or a defendant's refusal to accept notice that his or her check has not been paid, and a defendant's intent to defraud at the time of issuing the check is rational.

In sum, because the permissive rebuttable presumption created by Code § 18.2-183 is rational and does not relieve the Commonwealth of the ultimate burden of proof beyond a reasonable doubt, I would hold that it does not violate the Due Process Clause. Because the majority does not fully address this constitutional question, and because I believe appellant particularly raised this issue on brief in his appeal and before the trial court, I would hold explicitly that Code § 18.2-183 creates a permissive rebuttable presumption that does not violate the Due Process Clause and that the trial court did not err in its conclusion that it was not imposing an impermissible burden-shifting requirement under Code § 18.2-183.