COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Beales, Chafin and O'Brien
Argued at Norfolk, Virginia


ANTHONY BRYANT CUMMINGS

MEMORANDUM OPINION[*] BY
v.      Record No. 1891-14-1        JUDGE TERESA M. CHAFIN
NOVEMBER 10, 2015

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Marjorie A. Taylor Arrington, Judge

A. Robinson Winn, Deputy Public Defender (Dalton L. Glass,
Assistant Public Defender, on brief), for appellant.

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Anthony Bryant Cummings was convicted of one misdemeanor count of obtaining

property by false pretenses in violation of Code § 18.2-178 by the Circuit Court of the City of

Chesapeake. On appeal, Cummings argues that the circuit court erred by allowing the

Commonwealth to amend an indictment that originally charged him with the forgery of a public

record in violation of Code § 18.2-168 to an indictment charging him with the offense of which

he was convicted. He also contends that the evidence presented by the Commonwealth failed to

support his conviction. For the reasons that follow, we disagree with Cummings's arguments

and affirm his conviction.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). So viewed, the evidence established that Cummings entered into a contract to build an in-ground swimming pool at a private residence located in the City of Chesapeake ("the City"). The contract listed Cummings's company name as "Mid-Atlantic Pools." On the same day the contract was signed, Cummings received a $12,500 down payment from the homeowner, and he went to Chesapeake City Hall to obtain a building permit for the construction project.

Wendy Tabler, a permits manager, assisted Cummings with his application for a building permit. When Tabler reviewed Cummings's initial application, she noticed that the construction company he listed had an expired business license.[1] Tabler informed Cummings that a valid business license was required for the company to receive a building permit and that he could renew the listed company's license in another office located in the building. Cummings left Tabler's office and returned fifteen to twenty minutes later. He told Tabler that he had mistakenly listed the wrong company name, and he substituted "Currents Construction Company" ("Currents") as the name of the construction company on the application.

Tabler verified that Currents had a valid business license and ensured that Cummings's permit application met several other administrative requirements. Tabler then confirmed that the proposed building project complied with local zoning criteria. After she witnessed Cummings sign the permit application, Tabler directed Cummings to take the application to the building

---

[1] Although Tabler could not recall the exact name of the construction company that Cummings originally listed on his permit application, she testified that she thought the company name was "Mid-Atlantic."

inspector's office for further review. Richard Burkard, Jr., the city administrator responsible for issuing building permits, reviewed and processed Cummings's permit application that same day. Among other things, Burkard approved Cummings's building plans and filled out a building permit "red" card that was intended to be posted at the construction site. Burkard then issued the permit to Cummings.

Cummings was not employed or otherwise affiliated with Currents, and he did not have permission to list the name of that company on his application for the building permit. When Cummings failed to build the pool or return the down payment that he received from the homeowner, he was charged with obtaining money or property by false pretenses from the homeowner in violation of Code § 18.2-178 and forging and uttering a public record in violation of Code § 18.2-168.

At Cummings's trial, the owner of Currents testified that Cummings was not authorized to use the name of the company to apply for building permits. Tabler and Burkard testified about the permit application process and their interactions with Cummings on June 24, 2013. Tabler brought Cummings's original permit application with her to the trial, and copies of the application and the relevant building plans were introduced into evidence. Tabler explained that state regulations required the City to physically retain building permit files for three years.

Cummings moved to strike the charges against him. Citing Henry v. Commonwealth, 63 Va. App. 30, 753 S.E.2d 868 (2014), he argued that the evidence presented was insufficient to prove the elements of the forgery and uttering offenses. He also argued that the evidence failed to establish that he intended to defraud the homeowner when he accepted the down payment. The circuit court directed the parties to submit memoranda related to the forgery and uttering charges and continued the case for further argument.

Upon reviewing the parties' pleadings and hearing additional argument, the circuit court concluded that the facts of the case did not fit the definition of forgery under Henry. In response, the Commonwealth moved to amend the forgery indictment to charge misdemeanor obtaining property by false pretenses in violation of Code § 18.2-178, arguing that Cummings had obtained the building permit by lying about the name of his construction company in his application. Cummings objected to the amendment based on the elements of the offenses and argued that the amendment did not "fit the facts of the case." The circuit court allowed the amendment, convicted Cummings of obtaining property by false pretenses as charged in the amended indictment, and dismissed the remaining charges. Cummings appealed his misdemeanor conviction to this Court.

## II. ANALYSIS

On appeal, Cummings argues that the circuit court erred by allowing the Commonwealth to amend the indictment because the amendment impermissibly changed the nature and character of the offense charged. Cummings also contends that the evidence was insufficient to support his conviction of obtaining property by false pretenses. Specifically, Cummings argues that the endorsement of a building permit is not property and that the building permit in question and its corresponding paperwork were never transferred to him from the City. While Cummings concedes that he did not make these specific arguments concerning the sufficiency of the evidence at trial, he requests that we apply the ends of justice exception to Rule 5A:18 and consider these issues.

### A. THE AMENDMENT OF THE INDICTMENT DID NOT CHANGE THE NATURE AND CHARACTER OF THE OFFENSE

Code § 19.2-231 governs the amendment of indictments. That statute provides, in pertinent part:

> If there be any defect in form in any indictment, presentment or information, or if there shall appear to be any variance between the allegations therein and the evidence offered in proof thereof, the court may permit amendment of such indictment, presentment or information, at any time before the jury returns a verdict or the court finds the accused guilty or not guilty, *provided the amendment does not change the nature or character of the offense charged.*

(Emphasis added). "The purpose of an indictment is to give the defendant notice of the nature and character of the charged offense so he can make his defense," Pulliam v. Commonwealth, 55 Va. App. 710, 713, 688 S.E.2d 910, 912 (2010), and "'[t]he limitation on amendment to indictments in Code § 19.2-231 to amendments that do not change the nature or character of the offense is clearly intended to protect the defendant from being deprived of [that] notice . . . ,'" id. at 713-14, 688 S.E.2d at 912 (quoting Rawls v. Commonwealth, 272 Va. 334, 346, 634 S.E.2d 697, 702 (2006)).

The determination of whether an amendment to an indictment changes the nature and character of the charged offense presents a question of law involving the interpretation of various statutes, and accordingly, is reviewed *de novo*. Id. at 713, 688 S.E.2d at 911. Additionally, we acknowledge that "Code § 19.2-231 'is remedial in nature and is to be liberally construed in order to achieve the laudable purpose of avoiding further unnecessary delay in the criminal justice process by allowing amendment, rather than requiring reindictment by a grand jury.'" Charles v. Commonwealth, 63 Va. App. 289, 295, 756 S.E.2d 917, 920 (2014) (quoting Powell v. Commonwealth, 261 Va. 512, 533, 552 S.E.2d 344, 356 (2001)).

"In determining whether [an] amended charge changes the nature or character of the offense charged, we examine the conduct or overt acts proscribed in each statute." Pulliam, 55 Va. App. at 715, 688 S.E.2d at 913. However, "in analyzing whether an amendment to an indictment is compliant with Code § 19.2-231, the Court does not 'compare the elements of the offense, but the underlying conduct of the defendant.'" Charles, 63 Va. App. at 297, 756 S.E.2d

at 921 (quoting Pulliam, 55 Va. App. at 717, 688 S.E.2d at 914). "'[W]here there is similarity of purpose and subject matter of the Code sections involved, an amendment to an indictment [that merely] changes the Code provision under which a defendant is charged . . . does not change the nature or character of the offense charged and is permissible under the provisions of [Code] § 19.2-231.'" Id. at 295-96, 756 S.E.2d at 920 (alterations in original) (quoting Dunaway v. Commonwealth, 52 Va. App. 281, 297, 663 S.E.2d 117, 125 (2008)).

The indictment at issue in the present case originally charged Cummings with forging a public record in violation of Code § 18.2-168. That statute provides:

> If any person forge a public record, or certificate, return, or attestation, of any public officer or public employee, in relation to any matter wherein such certificate, return, or attestation may be received as legal proof, or utter, or attempt to employ as true, such forged record, certificate, return, or attestation, knowing the same to be forged, he shall be guilty of a Class 4 felony.

Over Cummings's objection, the indictment was amended by the Commonwealth to charge him with misdemeanor obtaining property by false pretenses in violation of Code § 18.2-178. That statute provides, in pertinent part, "[i]f any person obtain, by any false pretense or token, from any person, with intent to defraud, money, a gift certificate or other property that may be the subject of larceny, he shall be deemed guilty of larceny thereof . . . [and] shall be guilty of a Class 4 felony."[2] Code § 18.2-178.

Cummings contends that the amendment of the indictment changed the nature and character of the offense charged, and he bases his argument primarily on the differing elements

---

[2] The amended indictment charged Cummings with obtaining property under the first clause of Code § 18.2-178(A) rather than the second clause of that subsection that specifically criminalizes obtaining a person's signature by false pretenses. See Code § 18.2-178(A) ("if [any person] obtain, by any false pretense or token, with [intent to defraud], the signature of any person to a writing, the false making whereof would be forgery, he shall be guilty of a Class 4 felony").

- 6 -

of the offenses charged in the original and amended indictments.[3] Cummings argues that, while both offenses required proof of his intent to defraud, the obtaining by false pretenses offense required proof of his acquisition of property whereas the forgery offense did not require such proof. We agree with Cummings that a forgery offense defined by Code § 18.2-168 has different elements than an obtaining property by false pretenses offense defined by Code § 18.2-178. See Bateman v. Commonwealth, 205 Va. 595, 600, 139 S.E.2d 102, 106 (1964) ("The evidence necessary to establish forgery . . . is not the same [as that] required to establish larceny [by false pretenses]."). As previously stated, however, when determining whether an amendment to an indictment changes the nature and character of the charged offense, our inquiry focuses on the underlying conduct of the appellant rather than the elements of the offense. See Charles, 63 Va. App. at 297, 756 S.E.2d at 921.

When we review the conduct and overt acts of Cummings and the purpose and subject matter of the statutes defining the offenses at issue in this case, we conclude that the amendment of the indictment did not change the nature and character of the offense charged. While the offenses defined in Code §§ 18.2-168 and 18.2-178 have different elements, the charges under both sections were based on the same conduct. The Commonwealth continually premised its case on the same operative facts throughout the prosecution of both offenses. Under both the original and amended indictments, the Commonwealth argued that Cummings used a business name and license number that he was not authorized to use to obtain a building permit from the

---

[3] On appeal, the Commonwealth argues that Rule 5A:18 bars our review of Cummings's argument concerning the amendment to the indictment. The Commonwealth contends that Cummings failed to argue that the amendment changed the nature and character of the offense charged by the indictment or object to the amendment on that basis. Upon reviewing the record, however, we find that Cummings argued that the offenses presented different elements and required different proof. While he may not have expressly referenced "a change in the nature and character of the offense charged," we conclude that his argument adequately presented the issue to the trial court, and therefore, preserved it for our review.

City. Accordingly, the charges under both the original and amended indictment were based on the same conduct: Cummings's misrepresentation on the permit application.

Furthermore, Code §§ 18.2-168 and 18.2-178 share a similarity of purpose and subject matter.[4] While "'forgery is a crime aimed primarily at safeguarding confidence in the genuineness of documents,'" Henry, 63 Va. App. at 38, 753 S.E.2d at 872 (quoting 3 Wayne R. LaFave, Substantive Criminal Law § 19.7(j)(5) (2d ed. 2003)), and "[t]he gravamen of [an obtaining property by false pretenses] offense . . . is the obtainment of ownership of property," Quidley v. Commonwealth, 221 Va. 963, 966, 275 S.E.2d 622, 624 (1981), both charges require a misrepresentation from the accused. See Henry, 63 Va. App. at 38, 753 S.E.2d at 872. Although the elements of an obtaining property by false pretenses offense may be established with proof of a wide variety of misrepresentations and forgery offenses require the accused to create a false document and thereby misrepresent its genuineness, see id., both offenses are premised on fraudulent representations made by the accused. Code §§ 18.2-168 and 18.2-178 are both codified in Chapter 6 of Title 18.2 of the Code of Virginia, entitled "Crimes Involving Fraud," and they exist to punish individuals who seek to profit or gain some advantage by committing fraud.[5]

Given the similarity of the purpose and subject matter of the statutes at issue in this case and the fact that the same conduct by Cummings served as the basis of both charges, we conclude that the amendment of the indictment did not change the nature and character of the

---

[4] We note that these two offenses are commonly charged together. When an individual successfully commits forgery, he or she may falsely represent that the forged document is genuine in order to obtain money or other property. When that individual is successful in obtaining the money or property, he or she is often charged with both forgery and obtaining money or property by false pretenses.

[5] A conviction under either section is classified and punished as a Class 4 felony.

offense charged. Accordingly, we hold that the circuit court did not err by allowing the amendment.

### B. THE RECORD DOES NOT AFFIRMATIVELY ESTABLISH THAT A MISCARRIAGE OF JUSTICE HAS OCCURRED AND THE ENDS OF JUSTICE EXCEPTION TO RULE 5A:18 DOES NOT APPLY

On appeal, Cummings asks this Court to review his arguments concerning the sufficiency of the evidence supporting his conviction under the ends of justice exception to Rule 5A:18. Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." "'The ends of justice exception is narrow and is to be used sparingly,'" and applies only in the extraordinary situation where a miscarriage of justice has occurred. Redman v. Commonwealth, 25 Va. App. 215, 220-21, 487 S.E.2d 289, 272 (1997) (quoting Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 10 (1989)). "In order to show that a miscarriage of justice has occurred, thereby invoking the ends of justice exception, the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record *must affirmatively prove* that an element of the offense did not occur." Id. at 221-22, 487 S.E.2d at 273 (emphasis added).

"[T]o invoke the ends of justice exception when sufficiency of the evidence has been raised for the first time on appeal, an appellant must do more than show that the Commonwealth *failed* to prove an element or elements of the offense." Id. at 221, 487 S.E.2d at 272 (emphasis in original). "In order to avail oneself of the exception, [the appellant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." Id. (emphasis in original). "Therefore, 'in examining a case for miscarriage of justice, we do not simply review the sufficiency of the evidence under the usual standard, but instead determine

whether the record contains affirmative evidence of innocence or lack of a criminal offense.'"[6]

Flanagan v. Commonwealth, 58 Va. App. 681, 695, 714 S.E.2d 212, 218 (2011) (quoting

Wheeler v. Commonwealth, 44 Va. App. 689, 692, 607 S.E.2d 133, 135 (2005)).  To sustain a

conviction of obtaining property by false pretenses,

> the Commonwealth must prove: "(1) an intent to defraud; (2) an
> actual fraud; (3) use of false pretenses for the purpose of
> perpetrating the fraud; and (4) accomplishment of the fraud by
> means of the false pretenses used for the purpose, that is, the false
> pretenses to some degree must have induced the owner to part with
> his property."

Riegert v. Commonwealth, 218 Va. 511, 518, 237 S.E.2d 803, 807 (1977) (quoting Bourgeois v.

Commonwealth, 217 Va. 268, 272, 227 S.E.2d 714, 717 (1976)); see also Shropshire v.

Commonwealth, 40 Va. App. 34, 39, 577 S.E.2d 521, 523 (2003).  "The gravamen of the offense

. . . is the obtainment of ownership of property, by false representations or pretenses."  Quidley,

221 Va. at 966, 275 S.E.2d at 624.

Cummings argues that the evidence presented by the Commonwealth failed to establish

that he obtained property by false pretenses.[7]  Although Cummings presents two separate

assignments of error addressing the sufficiency of the evidence, both arguments are based on the

premise that Cummings did not obtain any property from the City.  Cummings contends that the

endorsements he obtained from various city administrators on the building permit are not

property and that the actual building permit in question and its corresponding paperwork were

never transferred to him.

---

[6] When considering the sufficiency of the evidence on appeal in the absence of an appellant's procedural default under Rule 5A:18, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it."  Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002); see also Code § 8.01-680.

[7] Cummings does not challenge the evidence proving the other elements of the offense.

- 10 -

We agree with Cummings's argument that endorsements themselves do not constitute property that may be the subject of larceny, and therefore, are not considered "property" that may be obtained by false pretenses under Code § 18.2-178 as charged by the Commonwealth in this particular case.[8] When Cummings applied for the building permit, he obtained permission from the City to build a swimming pool on a particular piece of property pursuant to specified plans. Permission to build a swimming pool, however, is not property as that term is defined in Code § 18.2-178.

Nevertheless, the Commonwealth based Cummings's obtaining property by false pretenses charge on the actual copy of the permit that he received rather than the permission to build granted to him in that permit. The obtaining property by false pretenses charge was based on Cummings's acquisition of the pieces of paper on which the permit was printed. "'At common law choses in action, including bonds, notes and checks, were not the subject of larceny, being considered mere rights without corporeal existence, although the taking of the paper on which they were written could be larceny.'" Hunt v. Commonwealth, 46 Va. App. 25, 31, 614 S.E.2d 668, 670 (2005) (quoting Felkner v. State, 146 A.2d 424, 430 (Md. 1958)). Accordingly, a single sheet of paper, when stolen or acquired by false pretenses, may be the subject of a larceny or obtaining property by false pretenses charge. See id.; Owolabi v. Commonwealth, 16 Va. App. 78, 80-81, 428 S.E.2d 14, 15 (1993).

Cummings makes two arguments on appeal regarding his acquisition of the paper on which the permit and its accompanying paperwork were printed. First, Cummings contends that the record affirmatively demonstrates that he never received a copy of the permit from the City.

---

[8] We again note that the amended indictment charged Cummings with obtaining property under the first clause of Code § 18.2-178(A) rather than the second clause of that subsection that specifically criminalizes obtaining a person's signature by false pretenses.

Second, Cummings argues that title to the paper on which the permit was printed never passed to him. We disagree with both of these arguments.

The record fails to affirmatively demonstrate that Cummings did not receive a copy of the building permit. The relevant provision of the Virginia Uniform Statewide Building Code pertaining to the issuance of building permits provides that permits "shall be issued as soon as practicable" and that a copy of the permit "shall be posted on the construction site for public inspection until the work is complete." 13 VAC 5-63-100(A) and (E). Tabler testified that Cummings left her office with the permit application, and Burkard testified that he processed and issued the permit application on the same day that Cummings presented it. All of the signatures on the permit were made on June 24, 2013, the same day that Cummings submitted his permit application. No evidence in the record suggested that Cummings did not receive a copy of his approved permit on that day.[9]

Assuming *arguendo* that he received copies of the building permit, Cummings contends that title of the building permit never passed to him. "'[A]n essential element of larceny by false pretenses is that both title to and possession of property must pass from the victim to the defendant . . . .'" Shropshire, 40 Va. App. at 39, 577 S.E.2d at 523 (quoting Baker v. Commonwealth, 225 Va. 192, 194, 300 S.E.2d 788, 788 (1983)). Cummings argues that the City maintained title to the permit, and he supports his argument with the fact that the City retained the right to revoke the permit. He also argues that, if title to the permit was transferred from the

---

[9] Although Tabler produced the original copies of the building permit application and the approved permit at trial, she testified that state regulations required the City to retain the original documents for a period of three years. As state regulations also require contractors to post copies of building permits at construction sites, see 13 VAC 5-63-100(E), the circuit court could infer that copies of approved building permits were routinely given to their applicants while the original documents were retained by the City.

Also, we note that the amended indictment in this case charged Cummings with obtaining "property" by false pretenses. The "property" referenced in the indictment was not limited to the original building permit, and may be construed to reference copies of the original documents.

City, that title to the documents transferred to Currents rather than himself. Both of these arguments are misplaced. The evidence of this case implied that Cummings obtained title to the permit documents when he received possession of them from the City upon the approval of his application.

Cummings presents little authority to support his contention that title to the pieces of paper on which the copies of the permit were printed did not pass to him when he received them. He cites Bray v. Commonwealth, 9 Va. App. 417, 388 S.E.2d 837 (1990), however, in support of his argument. In Bray, the appellant was charged with obtaining a key to an apartment by false pretenses after she attempted to pay her security deposit and first month of rent with a worthless check. Id. at 419-20, 388 S.E.2d at 837. This Court held that title to the key did not pass to the appellant, reasoning that the key was "merely an accessory to the lease giving the [appellant] the means to secure and obtain access to the property during the term of the lease [that] must be returned to the owner upon termination of the lease." Id. at 425, 388 S.E.2d at 841.

Cummings attempts to analogize the key in Bray to the building permit papers in this case. He argues that the permit only gave him temporary permission to build that could be revoked by the City. We conclude, however, that a key to an apartment is fundamentally different from paper copies of a building permit. A key to an apartment is much more permanent and durable than paper copies of a building permit. The owner of leased property would expect to retain title to the key during the term of a lease because (1) it could be reused at a later date, and (2) the term of the lease would eventually expire. Paper copies of a building permit posted at a construction site would more than likely be worthless to the City if it revoked its permission to build. Additionally, no evidence in the record suggested that the City collected copies of building permits at the conclusion of construction projects. Accordingly, we determine that Bray is distinguished from the present case.

Cummings's argument confuses the distinction between the permission to build granted by the permit and the actual paper on which the permit was printed. While the City retained the right to revoke the permission to build that it granted to Cummings through the permit, see 13 VAC 5-63-100(H), no evidence in the record suggested that the City also retained title to the pieces of paper on which copies of the permit were printed. These copies were given to Cummings to post at his construction site, and it is speculative to conclude that the City intended to collect them from Cummings at a later date or otherwise retain title of the copies.

Cummings's additional argument that title of the building permit passed to Currents rather than himself also fails. While Cummings listed Currents on the building permit application as the construction company that would perform the work, he clearly listed himself as the applicant for the permit and he personally obtained possession of copies of the relevant documents. Moreover, Cummings listed Currents on the application without permission to do so. Cummings was not employed by Currents, and he was not authorized to obtain building permits using the name of that company. Currents never obtained possession of the paper on which the copies of the permit were printed, and only became aware of the project when Cummings failed to build the swimming pool.

Although the red card of the building permit stated that it was granted to Currents rather than Cummings, we cannot affirmatively conclude that title to the document vested in Currents under these circumstances. The evidence suggested that title of the copies of the building permit papers passed from the City to Cummings, as the applicant requesting the permit and the only individual who obtained possession of the copies, rather than Currents.

The record of this case fails to affirmatively establish that a miscarriage of justice has occurred. No affirmative evidence established that Cummings failed to receive copies of the building permit and its accompanying documents. Further, the evidence failed to establish that

title to the copies of the permit documents did not transfer to Cummings. No evidence affirmatively proved that the City retained title to the copies provided to Cummings or that title to those copies vested in Currents. For these reasons, we will not apply the ends of justice exception to Rule 5A:18 to address Cummings's arguments concerning the sufficiency of the evidence supporting his conviction.

### III. CONCLUSION

We hold that the circuit court did not err by allowing the Commonwealth to amend the indictment in the present case. Furthermore, we conclude that the evidence of this case failed to establish that a miscarriage of justice has occurred. Accordingly, we affirm Cummings's conviction.

Affirmed and remanded.[10]

---

[10] We remand this case for the correction of a clerical error in the sentencing order pursuant to Code § 8.01-428. While Cummings was convicted of misdemeanor obtaining property by false pretenses in violation of Code § 18.2-178, the sentencing order indicates that he was convicted of forging a public record in violation of Code § 18.2-168.